IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR418 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| MATTHEW L. KOLACZOWSKI, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Matthew L. Kolaczowski (Kolaczowski) (Filing No. 26). Kolaczowski is charged in the Indictment with the possession with intent to distribute oxycodone (Count I) in violation of 21 U.S.C. § 841(a)(1), the possession of two firearms after having been convicted of a felony (Count II) in violation of 18 U.S.C. § 922(g), and the forfeiture of currency seized by the Nebraska State Patrol (NSP) on October 3, 2010.

Kolaczowski seeks to suppress evidence obtained during his detention and arrest following a traffic stop by the NSP on October 3, 2010. The court held a hearing on the motion on March 9, 2011. Kolaczowski was present for the hearing along with his retained counsel, Kevin P. Bolger. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. The court heard the testimony of NSP Trooper Justin Buhlke (Trooper Buhlke) and received into evidence a copy of the NSP patrol car video/audio tape (Exhibit 1). A transcript (TR.) of the hearing was filed on March 16, 2011 (Filing No. 40), at which time the motion was deemed submitted.

**FINDINGS OF FACT**

Trooper Buhlke is assigned to the NSP Traffic Division in North Platte, Nebraska (TR. 4). As such he performs his duties in NSP's Troop D covering the west central part of Nebraska (TR. 4). Trooper Buhlke has been with the NSP since August of 2005, and performs his duties in uniform and in a marked patrol vehicle (TR. 3-4). On Sunday, October 3, 2010, Trooper Buhlke was on traffic patrol on Interstate 80 in Nebraska, working an evening shift. His patrol car was equipped with Stalker Dual SL radar equipment that

Trooper Buhlke had calibrated at the start of his shift and for which he had been certified to operate by the NSP since 2006 (TR. 5-9).  Around 10:00 p.m., Trooper Buhlke was traveling eastbound on Interstate 80 near mile marker 192 in Lincoln County (TR. 10).  Trooper Buhlke observed a vehicle, which appeared to be exceeding the seventy-five mile per hour speed limit, traveling westbound on Interstate 80 (TR. 10).  Trooper Buhlke activated his radar unit and clocked the vehicle at ninety-two miles per hour (TR. 11).  Trooper Buhlke turned around through the median and pursued the vehicle (TR. 11).

Trooper Buhlke activated his patrol lights and conducted a traffic stop of the vehicle, a black Dodge Charger, without incident as the Charger pulled to the side of the Interstate near mile marker 190 (TR. 11-12; Exhibit 1).  Trooper Buhlke radioed NSP dispatch with the description of the vehicle and location of the stop (TR. 12).  Trooper Buhlke approached the Charger on the passenger side, and asked the driver, Kolaczowski, for his driver's license and documents for the vehicle (TR. 12).  Kolaczowski provided Trooper Buhlke with a passport, and the registration, insurance, and rental agreement for the Charger (TR. 12).  Kolaczowski did not provide Trooper Buhlke with a driver's license (TR. 12).  Trooper Buhlke directed Kolaczowski to step out of the Charger and come back to the patrol car (TR. 12).  Kolaczowski did so (TR. 12).  Before entering the patrol car, Trooper Buhlke asked Kolaczowski if he had any weapons on him and, if he didn't mind, to show Trooper Buhlke the contents of his pockets to make sure Kolaczowski did not have any weapons on him (TR. 13).  Kolaczowski was not wearing a coat or sweater and was wearing a T-shirt and jeans (TR. 26).  Kolaczowski pulled a pocket knife out of his pocket and Trooper Buhlke had Kolaczowski place the knife on the hood of the patrol car (TR. 13, Exhibit 1).  Trooper Buhlke did not observe any weapons in Kolaczowski's waistband as Kolaczowski was pulling items from his pocket (TR. 25-26).

Upon entering the patrol car, Kolaczowski immediately rolled down the passenger window (TR. 14).  Trooper Buhlke rolled the window back up since it was chilly and windy outside (TR. 14).  Trooper Buhlke immediately smelled the odor of burnt marijuana coming from Kolaczowski's person (TR. 14).  Trooper Buhlke testified he could detect the odor of burnt marijuana based on his experience in conducting traffic stops and through training with a field training officer (TR. 14-15).  Trooper Buhlke asked Kolaczowski whether he had

been smoking marijuana or had any marijuana on him (TR. 16). Kolaczowski said "no" (TR. 16). Trooper Buhlke testified Kolaczowski, when asked about his itinerary, said he and his passenger drove to Inman, Nebraska, after he got off work on Friday and visited with a man named Joel, whose son was in the hospital, for a couple days (TR. 19, 24). Trooper Buhlke testified he checked Kolaczowski's driver's license in Colorado and it was not valid (TR. 16). Trooper Buhlke checked the rental agreement which indicated the Charger was rented to a Gary Gallegos, and did not list Kolaczowski as an authorized driver (TR. 18-19). The passenger in the Charger, Jesus Balmeceda (Mr. Balmeceda), also was not listed as an authorized driver (TR. 18). Trooper Buhlke got out of the patrol car, walked to the passenger side of the patrol car, and asked Kolaczowski to again empty his pockets for a more thorough search (TR. 12). Trooper Buhlke testified while his first search of Kolaczowski's pockets was for officer safety, this second search was because he detected the odor of marijuana from Kolaczowski (TR. 16-17). In this second search, Trooper Buhlke found a .45 caliber bullet and a magazine holder for a Glock pistol in Kolaczowski's pockets (TR. 17). Trooper Buhlke had Kolaczowski place the contents of his pockets in a bucket, which Kolaczowski held while seated in the front of the patrol car (TR. 18).

Trooper Buhlke returned to the Charger and talked with the passenger, Mr. Balmeceda (TR. 18-19). Trooper Buhlke did not detect the odor of marijuana in the cabin of Charger (TR. 30). Trooper Buhlke asked Mr. Balmeceda if there were any weapons in the car or whether he had any drugs on him (TR. 19). Mr. Balmeceda stated "no" (TR. 19). Trooper Buhlke told Mr. Balmeceda that Kolaczowski had a bullet and a magazine holder in his pockets and asked Mr. Balmeceda where the guns were (TR. 19). Mr. Balmeceda stared at the trunk of the Charger, paused a while, and stated he thought they had left them at Joel's place (TR. 19). Trooper Buhlke patted Mr. Balmeceda for weapons and found none (TR. 19-20). Trooper Buhlke then placed Mr. Balmeceda in the back seat of the patrol car (TR. 20).

Trooper Buhlke returned to the Charger and conducted a search of the passenger cabin followed by a search of the trunk (TR. 20). In the cabin of the Charger, Trooper Buhlke found a marijuana pipe near the shifting lever of the car (TR. 20). In the trunk,

Trooper Buhlke found a large duffel bag containing twelve quart-sized Mason jars, two of which contained marijuana and the others appeared to have marijuana residue in them (TR. 21).  Also in the trunk, Trooper Buhlke found a backpack containing numerous bottles of pharmaceutical prescription medications, diabetic needles, syringes, a spoon, and a Zippo lighter with lighter fluid (TR. 21). Underneath the backpack, Trooper Buhlke found two handguns in holsters (TR. 21).

At this time, Trooper Matthew Naughtin (Trooper Naughtin) drove up and parked behind Trooper Buhlke's patrol car (TR. 21).  Trooper Buhlke returned to his patrol car, directed Kolaczowski and Mr. Balmeceda to step out of the patrol car, and placed them in handcuffs (TR. 22).  Kolaczowski was placed in Trooper Naughtin's patrol car and Mr. Balmeceda was placed in Trooper Buhlke's patrol car (TR. 21-22).  Trooper Buhlke called the local county attorney, informed him of the situation, and the county attorney advised Trooper Buhlke of how to proceed (TR. 22).  Thereafter, both Kolaczowski and Mr. Balmeceda were driven to the NSP office in North Platte, Nebraska (TR. 22).  At the NSP office, Trooper Buhlke advised Kolaczowski of his *Miranda* rights and Kolaczowski gave a statement to Trooper Buhlke (TR. 22).

## CONCLUSIONS OF LAW

Kolaczowski does not challenge the traffic stop but seeks to suppress the seizure of evidence from the Charger and any subsequent statement as a product of the illegal seizure (TR. 35).  The government asserts Trooper Buhlke had probable cause to search the Charger on the basis of Trooper Buhlke's detection of the odor of burnt marijuana on Kolaczowski's person.

The detection of the odor of burnt marijuana on an occupant of a vehicle provides probable cause to search that vehicle for controlled substances. *United States v. Brown*, No.10-1237, 2011 WL 798842 (8th Cir. Mar. 9, 2011) (**citing** *United States v. Neumann*, 183 F. 3d 753, 756 (8th Cir. 1999) ("[D]etection of the smell of burnt marijuana . . . gave [the officer] proable cause to search the entire vehicle for drugs.")); *United States v. Davis*, 569 F.3d 813, 815 (8th Cir. 2009).  As such, law enforcement officers may search

4

a vehicle without a warrant and without consent as they have probable cause the vehicle contains evidence of criminal activity.  *Carroll v. United States*, 267 U.S. 132 (1925).

Kolaczowski's assertion that the search of the Charger violated the dictates of *United States v. Gant*, 129 S. Ct. 1710 (2010), is unavailing as the search of Kolaczowski's automobile was justified on the basis of probable cause and the analysis of search incident to arrest is unnecessary and irrelevant.  *United States v. Webster*, 625 F.3d 439, 445 (8th Cir. 2010).

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Kolaczowski's motion to suppress (Filing No. 26) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 18th day of March, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge